IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DONALD L. ROGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  CIVIL ACTION NO. 2:12CV367-MEF |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Donald L. Rogers, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act and his application for supplemental security income under Title XVI of the Act. Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

Plaintiff filed his applications for benefits on August 18, 2010, alleging that he became disabled on July 30, 2010, due to chronic depression and arthritis. (Exhibits 1D, 2D, 2E). After his applications were denied at the initial administrative levels, plaintiff requested a hearing before an administrative law judge. (Exhibits 1A, 2A, 1B-5B, C10B). The ALJ held a hearing on July 18, 2011, at which plaintiff was represented by counsel. (R. 37-84).

On August 15, 2011, the ALJ issued a decision denying plaintiff's claims. (R. 19-32). The ALJ concluded that plaintiff has "severe" impairments of bipolar disorder, depressive disorder, adjustment disorder, alcohol abuse, and cannabis abuse, and that – including the effects of plaintiff's substance abuse disorders – plaintiff impairments meet the requirements of listings 12.04 (affective disorders) and 12.09 (substance addiction disorders). (R. 22; see 20 C.F.R. Part 404, Subpart P, Appendix 1). The ALJ further determined that, if plaintiff ceased his substance use, he would: (1) still have a severe impairment or combination of impairments (R. 25); (2) not meet or medically equal the listings (id.); (3) still be mentally unable to perform his past relevant skilled work (R. 27, 30); and (4) retain the residual functional capacity to perform other jobs existing in significant numbers in the national economy. (R. 27, 31). The ALJ concluded, accordingly, that plaintiff was not disabled for purposes of his Title II and Title XVI applications. (Id.). Plaintiff appealed the ALJ's decision to the Appeals Council and, on December 13, 2011, the Appeals Council denied review. (R. 6-11; Exhibit 14B). Plaintiff filed the present action thereafter, seeking review of the Commissioner's final decision. (Doc. # 1).[1]

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner.

---

[1] It appeared to the court initially that plaintiff had not filed his complaint in a timely manner; however, the Appeals Council had allowed plaintiff an extension of time to file a civil action. (See Doc. # 3 and Doc. # 7; R. 2-5).

Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff argues that he has not engaged in substance abuse since his involuntary admission to Searcy hospital in late 2010 and that his mental impairments continue to render him disabled; he also disagrees with the ALJ's credibility determination. (Doc. # 14, pp. 1-2, 10; see also Exhibit 12F (showing dates of involuntary admission)). In addition, while plaintiff did not raise this issue here, his former attorney argued to the Appeals Council that the ALJ erred in the weight he accorded to the mental residual functional capacity opinions of Dr. Serravezza and Fred George, Ph.D., and to the medical opinions of Dr. Yalamanchili. (R. 162-66). The Commissioner contends that the ALJ's decision is due to be affirmed, as

it is supported by substantial evidence and free of harmful legal error. (Doc. # 15, p. 1).[2]

This case turns on the issue of whether plaintiff's drug addiction or alcoholism is a material factor contributing to a finding of disability. If it is, the Social Security Act precludes a finding in plaintiff's favor on his Title II or Title XVI claim; it provides that the claimant "shall not be considered to be disabled[.]" 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The "key factor" in the materiality determination is whether the claimant would still be disabled if he stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535, 416.935. The claimant – not the Commissioner – bears the burden of proof on this issue. Doughty v.

---

[2] Pursuant to this court's order, and over the Commissioner's objection, counsel for the Commissioner summarized plaintiff's treatment record in an Appendix. (Doc. # 26; see also Doc. ## 19, 21, 24). Plaintiff has not objected to the Commissioner's summary. (See Doc. # 19)(allowing plaintiff to respond but stating that plaintiff need not do so if "[he] finds the Commissioner's summary to be an accurate and complete representation of the medical evidence of record"). There are a number of errors in the Commissioner's summary of plaintiff's treatment: (1) the ER treatment for the toe laceration listed at entry # 6 occurred on November 26, 2007, not on January 13, 2006 as the Commissioner indicates; (2) the physical therapy at entry # 41 occurred on May 3, 2007 rather than May 30, 2007; (3) at entry # 32, the Commissioner omits Dr. Anderson's diagnosis of a new ankle sprain; (4) at entry # 44, the Commissioner shows only plaintiff's admission date at Crenshaw Community Hospital and omits his discharge date of August 5, 2010; and (5) at entry # 45, the Commissioner includes plaintiff's admission date of September 22, 2010 but omits his discharge date of September 29, 2010. (R. 279, 291-92, 356-64, 381, 458). Additionally, the Commissioner includes three entries with the notation that the dates and signatures are illegible. (Doc. # 26, entries # 1 through # 3)(citing transcript pages including the psychiatrist's treatment notes within plaintiff's South Central Alabama Mental Health (SCAMH) records). Plaintiff's SCAMH records (Exhibits 16F and 20F) show that the clinic psychiatrist, Dr. Serravezza, prescribed medications for the plaintiff on October 11, 2010, January 3, 2011, and May 9, 2011. Undated entry # 2 is a duplicate of the treatment record the Commissioner describes at entry # 48 – the psychiatrist's note for January 3, 2011. The record summarized at undated entry # 3 notes plaintiff's reaction to the loss of his dog, a loss that immediately preceded plaintiff's inpatient treatment at Crenshaw Community Hospital from April 29, 2011 through May 2, 2011. In reaching its decision in this case, the court has reviewed the entire administrative transcript. Aside from the errors and omissions noted above, the Commissioner's Appendix A (Doc. # 26) is an adequate summary of the medical evidence.

Apfel, 245 F.3d 1274, 1280 (11th Cir. 2001).[3]  In other words, where the record includes medical evidence of a claimant's alcoholism or drug addiction, the claimant must prove that he is "disabled independent of [his] drug addiction or alcoholism" to prevail on his claims. 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

The court finds no error in the ALJ's consideration of the various medical opinions in reaching his materiality determination. Plaintiff's treating psychiatrist at SCAMH, Dr. Serravezza, concluded in June 2011 that plaintiff has functional limitations that have persisted at a disabling level since October 11, 2010. (Exhibit 21F). However – despite plaintiff's SCAMH diagnoses in January 2011 of "Psychosis w/ Alcohol" and "Psychosis Cannabis Abuse" (R. 437-43),[4] SCAMH's record of the Crenshaw Community Hospital December 2010 diagnosis of "Alcohol/cannabis abuse" (R. 493), and SCAMH's primary therapist's notation of plaintiff's "dual diagnosis" to include both mental illness and substance abuse (R. 494) – Dr. Serravezza did not respond to the query on the RFC form about the effect of plaintiff's alcohol and substance abuse on plaintiff's functional

---

[3] The Eleventh Circuit court noted, *inter alia*, the "pragmatic rationale" articulated by the Fifth Circuit for this allocation of the burden of proof – *i.e.*, that "'[The claimant] is the party best suited to demonstrate whether she would still be disabled in the absence of drug or alcohol addiction. We are at a loss to discern how the Commissioner is supposed to make such a showing, the key evidence for which will be available most readily to [the claimant].'" Doughty, 245 F.3d at 1280 (quoting Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999))(alterations in Doughty).

[4] SCAMH's diagnoses included the diagnostic codes of 291.3 for "Psychosis w/ Alcohol" and 292.12 for "Psychosis Cannabis Abuse." (R. 437). The DSM-IV-TR (the DSM version then in effect) describes these disorders as "Substance-Induced Psychotic Disorder[s]," specifying code 291.3 for alcohol-induced psychotic disorder with hallucinations, and code 292.12 for cannabis-induced psychotic disorder with hallucinations. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000, Text Revision), pp. 338-43.

limitations. (Exhibit 21F; see R. 507, ¶ 5 (no response to the question, "If the claimant's impairment(s) include alcohol and/or substance abuse, do these impairments contribute to any of the claimant's limitations set forth above? If so, please identify and explain what changes you would make to your answers if the claimant was totaly abstinent from alcohol and/or substance use/abuse."). The ALJ noted this omission – stating that "Dr. Serravezza provided no opinion as to what the claimant's limitations would be if he stopped abusing drugs and alcohol[,]" – and concluded that Dr. Serravezza's RFC opinion "appears to relate to the claimant's current condition (i.e., with the substance abuse disorders)." (R. 23, 24). The ALJ further observed, accurately, that "[a]s part of his [RFC] opinion, Dr. George specifically stated: "It is my opinion that [the claimant's] amount of drinking would materially effect his mood disturbance." (R. 23-24)(quoting Exhibit 17F at R. 454).[5] Citing plaintiff's conflicting statements and his involuntary admission to the hospital in September 2010 "'after medication noncompliance and alcohol and marijuana abuse led to decompensation'" (R. 25)(quoting Exhibit 18F at 2 (R. 458)), the ALJ concluded that "[i]t is clear that the claimant's substance abuse affects his symptoms to a much greater degree than he was willing to admit to Dr. George." (R. 25-26).[6]

---

[5] Read in context, it appears that Dr. George may have intended something other than what he wrote. (R. 454). However, the ALJ did not err in noting the opinion as Dr. George expressed it, particularly in view of the ALJ's well-supported observation that plaintiff had "understated the degree to which he currently abuses substances" during his consultative examination with Dr. George. (R. 25; see n. 6, infra).

[6] Dr. George's March 2011 assessment was based on plaintiff's report of "three episodes of drinking since 1995 and no marijuana use since then" and that "on these occas[ions] [he] did not get drunk." (R. 454). Plaintiff's report to Dr. George of "no marijuana use since [1995]" is contradicted by the medical evidence of record, including plaintiff's admission to Bradford Health Services in

In his argument to the Appeals Council, plaintiff's former attorney appears to contend that the ALJ also failed to give proper weight to Dr. Yalamanchili's April 2011 diagnoses of "chronic mental illness, a history of adjustment disorder and bi-polar disorder," and his "April of 2010" opinion that plaintiff "has a chronic mental illness with major depressive disorder severe." (Plaintiff's argument to Appeals Council, Exhibit 14B at R. 163-64)(citing Exhibits 19F and 18F, respectively). He further argues that, "[i]n exhibit 12F Searcy Hospital states his insight is poor and his judgment is poor wiith a GAF score of 25 and 41-50 upon discharge." (Id. at R. 164)(citing Exhibit 12F). Exhibit 18F reflects Dr. Yalamanchili's Axis I diagnoses, in September 2010 (not April), of: (1) "Major depressive disorder, recurrent, severe, with no psychosis"; (2) "Alcohol and marijuana abuse"; and (3) "Rule out adjustment disorder." (R. 458). On Axis IV, he noted "[c]hronic mental illness" and "[u]nemployment." (Id.). Dr. Yalamanchili reported that plaintiff had "continued to abuse alcohol" (R. 459) and that he was a court-ordered admission "after medication noncompliance and alcohol abuse and marijuana abuse lead [sic] to decompensation[.]" (R. 458). After plaintiff's voluntary admission to Crenshaw Community Hospital from April 29,

---

December 2004 for treatment of his cannabis abuse, after he tested positive for THC in a urine drug screen at work (R. 274), plaintiff's July 30, 2010 cannabinoid-positive urinalysis screening at the Crenshaw Community Hospital ER (R. 379-80), and his positive urine screen for cannabinoids at the ER on September 22, 2010 (R. 463); it also conflicts with plaintiff's August 2010 statement in his drug and alcohol questionnaire, "I will occasionally smoke mar[i]juana now as someone has it & smokes it with me. Which is usually 3-5 times a month" (R. 198), his October 2010 report upon admission to Searcy Hospital that he "smoke[s] marijuana" (R. 401) "once or twice a month" (R. 407) and "[i]n 2004, [he] self medicated with marijuana for depression" (R. 406). Plaintiff's report to Dr. George of drinking on only three occasions since 1995 conflicts with plaintiff's August 2010 statement "I have drank on 5 occasions this year." (R. 198; see also R. 407 (report upon admission to Searcy that he "Start[ed] drinking in January 2010 3 shots at a time")).

7

2011 through May 2, 2011, Dr. Yalamanchili diagnosed bipolar disorder and adjustment disorder on Axis I and, on Axis IV, noted "[c]hronic mental illness." (Exhibit 19F, R. 469). Although plaintiff's counsel did not cite Exhibit 6F, it includes Dr. Yalamanchili's August 5, 2010 Axis I diagnoses of "[m]ajor depressive disorder, recurrent and severe without psychosis" and "[h]istory of alcohol abuse in remission" upon discharging plaintiff from a six-day admission to Crenshaw Community Hospital. (R. 381). Plaintiff's urine screen upon admission was positive for cannabinoids. (R. 380). Dr. Yalamanchili also noted, on Axis IV, plaintiff's unemployment, low self-esteem and chronic mental illness. (R. 381). Exhibit 12F includes the records of plaintiff's court-ordered admission to Searcy Hospital from October 28, 2010 through December 13, 2010. As plaintiff's counsel argues (R. 164), the records included in this exhibit note plaintiff's "poor" insight and "poor" judgment and a GAF score of 25 upon admission and 41-50 upon discharge. The "poor" insight and judgment and GAF score of 25 were assessed during plaintiff's psychiatric evaluation upon admission (see R. 409, 411); however, the examining psychiatrist also diagnosed both alcohol abuse and cannabis abuse (R. 411). While plaintiff's GAF score was assessed at 41-50 upon discharge (R. 413), the discharging psychiatrist also diagnosed alcohol abuse and cannabis abuse, in addition to bipolar disorder (id.).

  The ALJ's decision reflects that he evaluated the treatment records within each of the exhibits plaintiff's counsel cited to the Appeals Counsel. (See R. 27-29)(discussing, *inter alia*, Exhibits 12F, 18F, and 19F). The ALJ found – consistent with the medical evidence in these exhibits – that plaintiff has "severe functionally limiting medical impairments" of

8

bipolar disorder, depressive disorder, adjustment disorder, alcohol abuse and cannabis abuse" (R. 22, Finding No. 3), and that these impairments, including plaintiff's substance abuse disorders, meet listings 12.04 and 12.09 (id., Finding No. 4). However, the exhibits cited by plaintiff's counsel do not impeach the ALJ's remaining formal findings. Neither Dr. Yalamanchili nor the psychiatrists at Searcy Hospital provided any opinion as to what the extent of plaintiff's functional limitations might be if he were to stop using alcohol and marijuana. (See Exhibits 6F, 12F, 18F, 19F).

The ALJ found that, to the extent they were inconsistent with the ALJ's finding as to plaintiff's residual functional capacity if he were to stop using alcohol or marijuana (R. 27, Finding No. 7), plaintiff's "statements concerning the intensity, persistence and limiting effects of his symptoms are simply not at all credible[.]" (R. 28). He declined to accept plaintiff's "self-serving statement" – *i.e.*, his testimony that he no longer abuses drugs and alcohol – "at face value." (Id.). In challenging the ALJ's credibility determination before this court, plaintiff argues, "As stated in the ALJ's decision, it is an issue with credibility. How can I have an issue of credibility when I have been gut wrenchingly honest from the very start? I am dual diagnosed with Bipolar II with recurring Psychosis and past alcohol/substance abuse. *I have not indulged in either since my involuntary admission [to] Searcy Hospital.*" (Doc. # 14, p. 1)(emphasis added). In evaluating the ALJ's decision for substantial evidentiary support, the court looks to the evidence presented during the administrative proceedings. The record reflects that plaintiff was discharged from his involuntary admission to Searcy Hospital on December 13, 2010. (R. 413). However, Dr.

9

George notes, in his report of plaintiff's March 24, 2011 consultative evaluation, that "[s]ince 1995 he indicated he has drank on three occasions within the last year but did not drink to the point of getting drunk. *He reported the last occasion he drank was in January of 2011.*" (R. 451)(emphasis added). The ALJ supported his credibility determination by noting the conflict between plaintiff's statements to Dr. George and the other evidence of record, including medical evidence and plaintiff's previous statements. (R. 28; see also n. 6, *supra*). Despite plaintiff's argument to the contrary, the record includes substantial evidence supporting the ALJ's credibility determination.

## New Evidence

In March 2013, plaintiff filed medical records documenting his three-week psychiatric hospitalization in September 2012. (Doc. # 20). Plaintiff filed the evidence without an accompanying motion. The Commissioner treats the plaintiff's submission as a motion to supplement the record, with an implied alternative motion for a "sentence six" remand. (Doc. # 23). In view of plaintiff's *pro se* status, the court construes his submission in the same manner. The Commissioner opposes the motion to supplement the record and contends that the evidence does not warrant a "sentence six" remand. (Doc. # 23).

Because the evidence was not presented to the ALJ or to the Appeals Council, the court may not consider it on the "sentence four" issue of whether the Commissioner's decision is supported by substantial evidence; the court's review of the evidence is limited to determining whether it warrants a remand to the Commissioner, without entry of judgment, pursuant to sentence six of 42 U.S.C. § 405(g). Ingram v. Commissioner of Social Security,

10

496 F.3d 1253, 1261-67 (11th Cir. 2007); see 42 U.S.C. § 405(g)(requiring the Commissioner to file a certified copy of the transcript of the administrative record "including the evidence upon which the findings and decision complained of are based" and – in sentence four – providing that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing"); Sullivan v. Finklestein, 496 U.S. 617, 624-25 (1990)(explaining the difference between the district court action authorized by sentence four and the "entirely different kind of remand" authorized by sentence six).

Plaintiff's motion to supplement the record – to the extent that plaintiff offers the evidence for the court's consideration in deciding whether to reverse the Commissioner's decision – is due to be denied. To obtain a sentence six remand, the plaintiff "must show the evidence is new and material and was not incorporated into the administrative record for good cause. New evidence is material, and thus warrants a remand, if 'there is a reasonable possibility that the new evidence would change the administrative outcome.'" Timmons v. Commissioner of Social Security, __ Fed. Appx. __, 2013 WL 3388234, * 5 (Jul. 9, 2013); see 42 U.S.C. § 405(g)(providing, in sentence six, that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"). The evidence plaintiff has filed consists of medical records documenting plaintiff's three-week

hospitalization after his August 31, 2012 suicide attempt.  (Doc. # 20; see pp. 7-8).  This hospitalization occurred nine months after the Appeals Council denied review and more than four months after plaintiff commenced the present action in this court.  Thus, the evidence is unquestionably "new," and plaintiff had good cause for failing to submit it during the administrative proceedings. The Commissioner does not argue otherwise; instead, she contends that plaintiff has not shown that the new evidence is material.

The new medical records demonstrate that Plaintiff was admitted to Florala Memorial Hospital on August 31, 2012, after he attempted suicide by ingesting prescription medication. (Doc. # 20, pp. 2-13).  His ethanol screen was negative. (Id., p. 11).  Plaintiff  remained at Florala Memorial overnight, then was transferred to Dale Medical Center. (Id., pp. 14-23). A urinalysis conducted upon plaintiff's admission to Dale Medical Center was negative for THC. (Id. at 21). Dr. Fernando Lopez evaluated plaintiff on September 2, 2012.  Dr. Lopez wrote:

> PRESENT ILLNESS: This patient suffers from bipolar disorder and has been under treatment and has had this problem for many years and apparently he has been getting depressed like many other people with mood disorder in the past 2-3 weeks and he has been insomnic, irritated, restless.  He took an overdose of medications, emptied all of his bottles.  Luckily the wife found him and took him to the ER and was seen in the hospital where he was treated and evaluated.  South Central Mental Health was consulted and the therapist did the history.  When he gets back he gets better.  Compounding his problems, this patient has been drinking also.  So the evaluation was done and psychiatric treatment was needed.
>
> PAST MEDICAL HISTORY: Denied any medical illnesses.

(Id., p. 19).  Dr. Lopez reported that plaintiff told him, "Doctor if I take my medications I

will be okay." (Id.). Dr. Lopez assessed "Bipolar disorder, depressed type" and assigned plaintiff a GAF score of 10. (Id.). Five days later, Dr. Lopez discharged the plaintiff from Dale Medical Center with the same diagnosis and a GAF score of 25. Dr. Lopez noted that the plaintiff continued to be depressed, despite taking his medications, and "he required long term placement to show improvement. Therefore it was recommended that he be committed to the state department of mental health at Searcy State Hospital." (Id., pp. 15-16). Plaintiff was admitted on that date, September 7, 2012, to Crenshaw Community Hospital instead of Searcy. His urine drug screen upon admission was negative for THC. (Id., p. 32). In his intake evaluation, Dr. Saeed Shah noted that plaintiff's past psychiatric history was "[s]ignificant for bipolar mood disorder with psychosis" but that he had "[n]o significant medical or surgical problems." (Id., p. 26). Under "History of Present Illness," Dr. Shah noted, *inter alia*, that "[t]he patient has been feeling down and depressed recently. He has financial stress, has poor energy, hopelessness, worthlessness, smokes tobacco one pack per day. Does not drink alcohol or abuse street drugs." (Id.). Plaintiff denied paranoia or hallucinations. (Id., p. 25). Dr. Shah diagnosed "Bipolar mood disorder, depressed with psychosis" and assessed a GAF score of 35. (Id.). On September 20, 2012, Dr. Shah discharged the plaintiff with the same Axis I diagnosis and a GAF score of 60. He described the adjustment of plaintiff's medications during his hospital stay and reported that plaintiff had benefitted from individual and group therapy and daily psychiatric visits. Under "Discharge Plan," Dr. Shah wrote, "The patient is discharged home with followup with South Central Mental Health. He was offered assistance with placement in a group home or

placement in a shelter due to marital problems. He declined. He preferred to go home and try to work out some kind of arrangement with his wife. He was released to court and expected to be released home from there." (Id., p. 24).

Plaintiff contends that his new evidence demonstrates that "no substance abuse was present during [his] recent breakdown." (Doc. # 17). While this is so, the breakdown occurred – as the Commissioner argues – more than a year after the relevant period. (See Doc. # 23, p. 4). The Commissioner's decision that is before this court for review is the ALJ's determination that plaintiff was not disabled for purposes of his claims for benefits from his alleged onset date of July 30, 2010 through August 15, 2011, the date of the ALJ's decision. (R. 32).

The screening for THC and alcohol only relates to plaintiff's condition upon admission and demonstrates that he had not ingested these substances for some period of time prior to his admission – a period which is not evidenced by the medical records that plaintiff has filed. Dr. Lopez noted upon his initial evaluation that plaintiff had "been getting depressed like many other people with mood disorder *in the past 2-3 weeks*" and that plaintiff told him, "Doctor if I take my medications I will be okay." (Doc. # 20, p. 17)(emphasis added). Dr. Shah noted, upon plaintiff's admission to Crenshaw Community Hospital, that "[t]he patient has been feeling down and depressed *recently*." (Id., p. 26)(emphasis added). Upon plaintiff's discharge, the staff offered to assist plaintiff in finding a place to stay "due to marital problems." (Id., p. 24). The court does not here minimize the circumstances that resulted in plaintiff's suicide attempt or the symptoms he was experiencing as a result of his

14

mental impairments at that time.  However, the issue before the court is whether there is a reasonable possibility that the records of plaintiff's hospitalization from August 31, 2012 through September 20, 2012 would change the administrative outcome of the decision now before the court for review – *i.e.*, whether this new evidence could reasonably result in a finding that plaintiff was disabled, independent of the material contributing factor of his substance abuse, before August 15, 2011.  The fact that plaintiff suffered a psychiatric hospitalization over a year thereafter that was not preceded by substance abuse does not suggest that he was disabled, within the meaning of the applicable law, during the relevant period.  Upon careful consideration of plaintiff's new evidence, the court finds that it does not present grounds for remand under sentence six of 42 U.S.C. § 405(g), as it is not material to the issue of whether plaintiff was disabled between his alleged onset date and the date of the ALJ's decision.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the ALJ's decision that plaintiff was not disabled for purposes of his Title II and Title XVI claims is supported by substantial evidence and a proper application of the law, and that plaintiff's new evidence does not warrant remand pursuant to sentence six of 42 U.S.C. § 405(g).  Accordingly, it is the RECOMMENDATION of the Magistrate Judge that: (1) plaintiff's motion (Doc. # 20) to supplement the record or, in the alternative, to remand to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) be DENIED; and (2) the decision of the Commissioner be AFFIRMED.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action.  The parties are DIRECTED to file any objections to this Recommendation on or before August 20, 2013.  Any objections filed must identify specifically the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  Resolution Trust Co. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 6th day of August, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE